King J.
The plaintiff in error brought his action in the court of common pleas, of Wood county, against the Cincinnati, Hamilton & Dayton Railroad Company, to recover damages caused by the burning of his mill, from a fire, alleged to have been started through the negligence of the defendant.
The trial in the common pleas court resulted in a verdict in favor of the defendant, and the plaintiff asks to have the judgment in that court reversed.
The errors claimed are these:
First. The court erred in striking from the petition certain words. Second. The court erred in ruling out evidence offered by the plaintiff. Third. In refusing to give certain requests asked by the plaintiff. Fourth. The court erred in its charge. Fifth. The claim is made that the verdict is against the weight of the evidence.
There are exceptions to the admission of some testimony offered by the defendant, but we find no error in the ruling of the court.
First: The court upon motion struck from the petition these words: “And that said company is responsible for *146 damages and injuries occasioned thereby to the property along the line of said railroad.”
This allegation amounts to a legal conclusion, and was properly stricken out. Also these words: “And negligently and carelessly omitted to keep its right of way free and clear of dry and combustible material.”
The statute provides that a railroad company shall keep its right of way clear and free from weeds and high grass, decayed timber and combustible material, which is liable to take fire. The whole allegation in the petition, a part of which only was stricken out, reads as follows: “And carelessly omitted to keep its right of way clear and free from dry and combustible material, but negligently permitted the said grain elevator with its contents to be and remain on the same near and within seventy-five feet of the plaintiff’s grist mill.” It was claimed in the petition, and on the trial, that the fire originated in the elevator. Now, if that elevator was the combustible material complained ofj and which the railroad company allowed to remain upon its right of way, that, we think, is not that kind of material referred to in the statute, and so the allegation that the company permitted dry and combustible material upon its right of way, is not material, and should have been stricken out.
Second: Plaintiff called a witness named Graham, who testified that he had been nine years employed and working as an engineer, and two years as a fireman on a locomotive engine, and in the employ of the Lake Shore & Michigan Southern Railway. That he had observed the escape of sparks from locomotive stacks, and knew the character and different kinds of spark arresters that during that period had been ordinarily used. Plaintiff then asked him this question: “You may state whether a locomotive that is properly constructed, properly managed, and has a proper spark arrester, in good order, will throw out sparks that will set fire to a pile of corn cobs forty or fifty feet away?
*147 This was objected to, and the objection overruled, and the witness answered: “The sparks will go out before they strike the ground, if an engine is properly constructed. It will not throw sparks ten feet away from the track.”
Witness is next asked whether such a locomotive, so equipped and in good order, would throw sparks large enough to burn a man who was three to five car lengths away from the smoke stack? Witness answered, “No, that he never knew of one that had the cone and netting in good shape”. Witness was cross-examined next, and inquired of when he left the employ of the Lake Shore Company, and he answered in 1877. That his business since 1877 had been running a saw mill. Defendant then moved the court to strike from the jury the testimony of the witness, on the ground that he was unqualified. This motion was sustained, and the plaintiff excepted.
We failed to discover any good reason why the witness was not qualified to testify to his experience and observation as to the escape of sparks from locomotives. If the witness had not been recently employed where he could observe the matters in question, or the conditions had in the years of his non-employment been changed, this might affect the weight of his testimony. We think the character of it was such that experience and observation would fit him to testify, although he had not in recent years been engaged* in a calling that would continue or add to his knowledge on such a subject. One Clark was next called, who testified that he bad been engaged as a locomotive engineer up to a recent period, and was asked whether a locomotive that is properly constructed and properly managed and has a proper spark arrester in good order, will throw out sparks that will set fire to a wood pile a distance of thirty feet or more from the right of way. That question was objected to, and objection sustained.
*148 Another question follows, relating to the setting fire to a hay stack the same distance away from the right of way; and then, whether a spark emitted from such a locomotive, would set fire to grass fifty feet from the railroad track. Objections to this were sustained, and the plaintiff excepted, plaintiff stating that he expected to show that an engine properly constructed and properly managed, and with a proper spark arrester, will not throw fire a distance of thirty feet, and will not set fire to a wood pile, hay stack, or grass, the distance named.
We are of the opinion that the witness should have been permitted to answer these questions. We think the experience of the witness was of a kind upon this subject, that enabled him to give an opinion, and which he might give. That upon this subject,-a man of ordinary affairs would have that knowledge, nor was it such a question that all the facts could be placed before a jury to enable them to form an opinion irrespective of that witness. Locomotive engineers, by reason of their employment, cannot avoid becoming acquainted with and acquiring the kind of knowledge called for in these questions, and we think the answer should have been permitted.
Another witness, .Kretzinger, called by the plaintiff, testified that he lived in the neighborhood where this fire occurred, and was asked, whether, shortly prior to the date of the fire, if he saw any other fires along or adjacent to the right of way of the defendant company, and he answered that he had. He was asked to state whether that was about that time. This was objected to, and an answer permitted. He said that while he was walking along, and during the dry months, he frequently had^seen and put out fires that 'occurred along the right of way. Then followed a motion to strike this answer from the jury, and this was sustained, to which the plaintiff excepted. Plaintiff’s counsel then asked the witness if this was prior to July 29th, *149 1894, and he answered, that was as near as he could locate the time, somewhere in July. The question was then asked whether during the month of July, shortly before July 29, the date of the fire, the witness saw any fires along or adjacent ta the track of this line of railway, This was ojected to and sustained, and plaintiff excepted.
We may assume from all that is contained on that page of the record, that the witness would have answered as he answered the previous question, which answer was ruled out. Up to this period of the trial of the case, the plaintiff had hot identified any particular engine as the cause of the fire. Then the same witness is asked this question: “I will ask you to state what you saw coming from the top of defendant's locomotive, and what you saw. if anything, passing through the village of Milton Center, Wood county, Ohio, a short time prior to July 29, and within the month of July, 1894,” This was objected to,objection sustained, and plaintiff excepted. Plaintiff stated that he expected to show by the answer that during the month of July, and prior to July, 1894, several trains passed through Milton Center, emitting a great quantity of large sparks, and that the same were thrown a great distance from .the engine.
We understand the rule to be well settled, that where no engine has been identified as the cause of the fire, that the plaintiff may offer testimony showing the condition of the locomotives on defendant’s road, and their action as to the emission of sparks near the vicinity where the fire in ques tion was started, and about the time of the fire, either a short time before or after, and that the witness will not be confined to a day or two, but will be allowed to testify to a reasonable limit, and a month preceding the fire would not exceed that limit. This court so held in Lakeside R. R. Co. vs. Kelly, 10 C.C.R., page 322. The authority therein cited sustains that proposition: 144 Pa. St.641.
Unless the identification by the paintiff of a particular engine is certain, he is not confined in his testimony to *150 any particular engine, but may show that the engines of the company generally emitted sparks as they passed along the line of the railroad company.
It is true here, that many of these questions are leading, or are otherwise improper in form, but they were not objected to upon that ground, nor does the court exclude them for that reason.
Third: When the evidence in this case was concluded, the plaintiff asked the court to charge this proposition: “If you find that the fire from which the mill was ignited and destroyed, originated upon the lands belonging to defendant, the Cincinnati, Hamilton & Dayton, Railroad Company, then this fact makes it prima facie evidence that such fire was caused by operating its railroad. ” This request the court refused, but charged the jury, among other things, the following: “If the jury find from the evidence that the fire was communicated from the engine used by the defendant upon its railroad, passing through Weston, to the elevator, on the 29th day of July, 189i, and you further find from the evidence that by reason of such fire so communicated, the said elevator was burned, and that the elevator fire directly caused the mill owned by the plaintiff to take fire, and thereby to burn up, then the fact that such fire was communicated should be taken by the jury as prima facie evidence to charge the defendant with negligence, unless it further appears from the evidence that said engine was in proper order, as will be further explained, and carefully operated and managed at the time of the alleged communication of fire; and provided, the plaintiff was not guilty of negligence in relation to such fire, and used reasonable efforts to put it out and save his property.”
The court also charged this: “The mere fact that the Baldwin elevator was at said time located on the land of the defendant, and at said time caught fire, whereby the mill of the plaintiff was destroyed, creates no presumption that said fire was caused by the defendant.”
*151 The evidence in this case shows that plaintiff’s mill, destroyed by fire, was situated on his own property, adjoining the right of way of the railroad. Across from this mill, and upon the defendant’s right of way, was an elevator known as the Baldwin elevator. The evidence seems to show quite cearly that the fire originated in this elevator, and it is claimed by the plaintiff, and the evidence tends to show] that sparks from a locomotive fell upon the roof of the elevator, and ata point where the roof of an addition adjoins the main building, and it is claimed that the roof had separated from the main building, leaving a large crack or opening, through which the sparks fell to the floor beneath, upon which there had accumulated a pile of corn cobs. This pile of cobs, and the roof of this elevator at the point where it is said the fire started, was about thirty feet from defendant’s track. We find no evidence contradicting this claim, that is, tending to show that the fire started in any other place. From the fire in the elevator the mill was caught and burned, so that the claim of the plaintiff is predicated upon the setting fire to the elevator, and if this be true, or if the jury so find it, then the fire clearly originated upon the lands of the railroad company.
'In 1894, and before this fire, the legislature enacted a statute found in volume 91, page 187, that every railroad company operating a railroad in Ohio, shall be liable for all loss or damage by fire “originating upon the land belonging to said railroad.’’ Also, that such railroad shall be liable for the damage by fire originating on lands adjacent to the railroad land, caused by sparks from an engine passing over such railroad and the existence of the fire upon such railroad company’s land, shall be prima facie evidence that such fire was caused by operating the railroad.
In the next section it is also provided, that the fact that fire was communicated by a locomotive engine of a railroad *152 company shall be taken as prima facie evidence to charge with negligence the corporation in the use and occupation of such railroad. The plaintiff asked a charge which was pertinent under this law, the gist of which is, that if the jury found that the mill was ignited from a fire originating upon the lands of the company, this fact made it prima facie evidence that such fire is caused by operating such railroad. The court refused it, and charged the jurjr that such fire should be taken as prima facie to charge the defendant with negligence, unless it should appear that said engine was in proper order, or unless it should appear that plaintiff had contributed by his own negligence to the fire.
This charge clearly ignored this statute, which in the first place makes the railroad liable for all loss or damage by fire originating upon its own lands, and provides also a rule of evidence, to-wit: that the existence of the fire upon the railroad company’s land, as in this case, if found that the fire originated in this elevator, “shall be prima facie evidence that such fire was caused by operating such railroad.’’ Not prima facie evidence of negligence to be rebutted, but prima facie evidence that the fire was caused, by the operation of the railroad, and leaving to be rebutted by the company two facts only: they might show that the fire did not originate upon their lands, and they might show that if it did so originate, ’’that it was not caused by the operation of the railroad, but from some other cause over which the company had no control.
We think this fire originated on the land of the railroad company, defendant, and if this statute has any effect, it is clear that the fact that it so originated, when proven, is prima facie evidence that the fire was caused by the operation of the railroad. The statute so says, and we may not ignore its plain language.
It is suggested that this statute is unconstitutional, but we are given no reason and are referred to no authority for this claim.
W, H. Martz, James & Bever stock, and B. S, Holbrook for Plainttiff,
Swayne, Swayne, Hayes & Tyler, and F. A. Baldwin for Defendant.
These statutes are in force in several states, and we know of no case where they have been held unconstitutional. There seems to be some reason for the validity of such a statute, since the railroad company, on its own land, can best provide for the prevention of fire, and we think the rule of evidence provided by the legislature was one that it had power to enact, and that the court erred in refusing the request and in charging the jury as stated.
Fourth — We are required to pass on all errors assigned, and the next one is that the verdict is contrary to the evidence and the law, and an examination of this record indicates to us that this assignment of error is well taken, for we must hold that the eivdence fairly shows that this fire originated upon the lands of the railroad company. So originating, the statute says that it is prima facie evidence that it was caused by the operation of the railroad. The company offer no evidence tending to disprove this, and hence, the plaintiff was entitled to recover, if the proper rule of law had been given to the jury upon the proofs as they existed.
The case will, therefore, for the reasons above given, be reversed, and remanded for a new trial.